**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | |
| HIKEEM TORRENCE : | No. 10-620-13 |

**AMENDED MEMORANDUM**

STENGEL, J.                                                                July 18, 2012

Presently before the Court is Defendant Hikeem Torrence's Motion to Suppress. For the following reasons, Defendant's Motion will be denied.

**I.  Background**

On September 22, 2010 and September 7, 2011, a federal grand jury returned a seventy-three count indictment and an eighty-nine count superseding indictment, respectively, charging Defendant, Hikeem Torrence, along with nineteen (19) other Defendants with various crimes occurring on or about October 2001 through approximately October 6, 2010.  These criminal acts were committed in and around the Bartram Village Housing Development (BVHD) in Southwest Philadelphia by a criminal enterprise known to law enforcement as the "Harlem Boys."  Throughout the course of the investigation, police and federal authorities obtained and executed numerous search and seizure warrants, which led to the recovery of drugs, drug paraphernalia, drug proceeds, firearms, ammunition, fired cartridge casings, documents, photographs, letters and other mail, and other items.

Members of the enterprise committed, attempted, and threatened to commit acts of violence, including murder, assault, and robbery, to protect and expand the enterprise's criminal operations. The members of the enterprise had varying roles. The Government alleges that Defendant Torrence participated in the "Harlem Boys" as a distributor of illegal narcotics and as a gunman for the enterprise. Torrence is charged with nine (9) counts in the superseding indictment. These counts include charges of conspiracy to participate in a racketeering enterprise under 18 U.S.C. § 1962(d); conspiracy to distribute under 21 U.S.C. § 846; and distribution of cocaine base ("crack") under 21 U.S.C. § 841(a)(1). Torrence has filed five (5) pre-trial motions, which have been briefed by the parties and argued in a pre-trial motions hearing on May 15-16, 2012, where evidence and testimony were provided by the government and counsel on various motions. The motions include a motion to compel discovery (Doc. No. 61),[1] a motion to suppress physical evidence and statements and a motion in limine to exclude evidence (Doc. No. 191), a motion to sever (Doc. No. 300),[2] a motion to deny the admission of tape recordings (Doc. No. 301),[3] and a second motion in limine (Doc. No. 364).[4]

## II. Motion to Suppress Physical Evidence and Statements

On June 2, 2010, officers responded to a radio call of "person with a gun" at 5405 Bartram Drive, they located three FCCs on the ground. Upon arrival, the officers located

---

[1] Defendant's motion for discovery is denied for the reasons set forth in my July 12, 2012 Order.

[2] Defendant's motion to sever is denied for the reasons set forth in my July 12, 2012 Order.

[3] Defendant's motion to deny the admission of tape recordings is denied for the reasons set forth in my July 12, 2012 Order.

[4] Defendant's second motion in limine is denied for the reasons set forth in my July 12, 2012 Order.

four (4) .40 caliber shell casings on the step of 5405 Bartram Drive and three (3) in the yard to the immediate left of the property.  During the investigation, the officers knocked on the door of 5400 Eastwick Terrace, Apartment 3B, and encountered Torrence coming out of an apartment, almost knocking an officer to the ground and then fleeing.  Torrence was apprehended by the officers and he was immediately patted down.  The Government claims this pat down was reasonable because they believed the defendant was armed and dangerous.  United States v. Gatlin, 613 F.3d 374, 379 (3d Cir. 2010).

During the course of the pat down of his person, officers discovered eleven bags of packaged "crack" under the "plain feel" exception to the warrant requirement.  After the arrest, Torrence misidentified himself as "Malik Torrence" and falsely stated that he was fifteen (15) years old.[5]  The Defendant seeks to suppress the evidence and statements stating that the initial arrest was unconstitutional.

Police can arrest an individual without a warrant if, under the totality of the circumstances, the officer had probable cause to conclude that the person being arrested has committed or is committing an offense." United States v. Laville, 480 F.3d 187, 189 (3d Cir. 2007).  Probable cause to conduct a search exists "when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Hodge, 246 F.3d 301, 305 (3d Cir.2001) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Deference is accorded to an "officer's

---

[5] Torrence argues that these statements were made in violation of Miranda v. Arizona, 384 U.S. 436, 478-79 (1966) because the officers did not issue the required warnings before questioning him.  This argument fails because there is no requirement that the defendant be afforded Miranda warnings prior to being asked pedigree information as part of routing booking procedure.  U.S. v. Bishop, 66 F.3d 569, 572, n.2 (3d Cir.1995) (stating that an inquiry regarding name and age is not considered custodial interrogation as information provided during routine police booking may not be suppressed under the rule of Miranda).

judgment of whether criminal activity is taking place with an understanding that 'whether an officer has reasonable suspicion to warrant a stop . . . is often an imprecise judgment.'" United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006).

Officer Henry testified that he was informed by a passerby that the shooter went into the building wearing a white shirt and tan shorts.[6] After spotting Torrence, the officers immediately noticed that he matched the description of the "person with a gun." Even if Torrence did not sufficiently match the description, he was in the immediate vicinity of the shooting in a high crime area, and he ran from the police as soon as the officers knocked on the door. Additionally, Officer Henry testified that Torrence reached out and dropped what was discovered to be packets of cocaine, on the windowsill.[7] Deferring to the officers' judgment and taking into consideration the totality of the circumstances surrounding the arrest, I find that the stop was constitutional. Therefore, the Defendant's motion to suppress is denied.

### III. Motion in Limine to Exclude Evidence

Torrence argues that any of the evidence obtained as a result of the arrest on June 2, 2010, should not be permitted during trial under either Rule 401, Rule 403,[8] or the

---

[6] The description given by two people indicated that the shooter was approximately 5'5" in height, black male, about 21 years old. The description concerning the clothing varied from white t-shirt and jeans to no shirt and tan shorts, but Officer Henry testified that he was looking for an individual in khaki shorts. Torrence was wearing dark green cargo shorts at the time of the arrest. I believe the description was sufficiently close when considering the totality of the circumstances.

[7] A person can have no reasonable expectation of privacy in an item that he has abandoned. Hester v. United States, 265 U.S. 57, 58 (1924). Because Torrence cannot assert any expectation of privacy on the windowsill, he has no Fourth Amendment rights to the plastic bag that he dropped in that location. United States v. Dickens, 695 F.2d 765, 777-78 (3d Cir. 1982).

[8] Rule 403 provides that:

Rules of Hearsay. Specifically, the June 2, 2010, shooting;[9] the recorded conversation on June 3, 2010, between a confidential informant and Ramel Moten regarding the shooting and Torrence's subsequent arrest;[10] the statement of Defendant Torrence's girlfriend to police on October 6, 2010, regarding being "jumped";[11] the September 16, 2010 and September 25, 2010, shooting of D. C. and M. R.;[12] and the June 4, 2010, statement of co-defendant, Shyheem Davis, to the Bureau of Alcohol, Tobacco and Firearms ("ATF").[13]

The Government argues that it intends to introduce evidence concerning the June 2, 2010 shooting, discussed above in order to show why police responded to the scene and that Defendant Torrence was, in fact, the shooter. "It is well settled that the government can prove overt acts not listed in the indictment, so long as there is no prejudice to the defendants thereby. United States v. Adamo, 534 F.2d 31, 38-39 (3d

---

[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Federal Rules of Evidence, Rule 403.

[9] Both Torrence and Roane were arrested for the June 2, 2010, shooting incident. Both Torrence and Roane were later released without being charged. Torrence argues that asserting there is no direct evidence that he was the shooter and that the shooting is not listed as an overt act in furtherance of the conspiracy and accordingly this evidence is highly prejudicial and should be excluded under Federal Rules of Evidence, Rule 401 and 403.

[10] Torrence argues that the conversation between Moten and the CI is hearsay because Torrence was not a member of any conspiracy and the conversation between Moten and the CI was not in furtherance of the conspiracy.

[11] The Government does not intend on eliciting evidence pertaining to the statement by Torrence's girlfriend. Therefore, the motion that that statement be suppressed is denied as moot.

[12] Torrence asserts that he has not been charged with the September 16, 2010, shooting of D.S. and the September 25, 2010, shooting of M.R., and that they are not charged as overt acts in furtherance of the RICO conspiracy, and accordingly, that they are irrelevant and unduly prejudicial.

[13] The motion to suppress the June 4, 2010, statement of Shyheem Davis is denied on the basis of the Government's representation that law enforcement will be able to appropriately redact the statment to comply with the Federal Rules of Evidence and applicable case law.

Cir.) cert. denied. 429 U.S. 841 (1976).  See also United States. v. Gypsum Company, 600 F.2d 414, 419 (3d Cir.), cert. denied, 444 U.S. 884 (1979).  Additionally, evidence of uncharged other crimes, wrongs, or acts which are an intrinsic part of the charged offenses and which tended to directly and intrinsically establish a defendant's participation in the charged offenses is highly relevant and admissible circumstantial evidence of a conspiratorial agreement.  United States v. Conley, 878 F. Supp. 751, 753 (W.D. Pa. 1994)

      The superseding indictment charges Torrence with being a member of the enterprise who protected it through the use of intimidation, violence, and threats of violence.  If proven, the alleged shooting on June 2, 2010, by Torrence, is evidence of the violence used to protect the enterprise: Torrence shot at a competing drug trafficker.  Accordingly, this evidence and testimony is not only relevant but also direct evidence of his participation in the RICO enterprise.  Therefore, the evidence is not precluded by Federal Rules of Evidence 401 or 403.

      On June 3, 2010, ATF utilized a Confidential Informant ("CI") to contact Ramel Moten on his cellular telephone to determine whether Moten would discuss the shooting incident that occurred on June 2, 2010.  During this recorded conversation, Moten told the CI that "Hak's" (Hikeem Torrence) bail is $330,000.  Moten also stated, that "Elliot," the victim of the shooting, "ratted them out."[14]  The Government argues that the recorded

---

[14] During the course of the conversation, Moten and the CI discussed Torrence's bail as a result of his arrest on June 2, 2010, for possession with intent to distribute a controlled substance.  When the CI stated that Torrence was "shooting" and it was "in broad daylight," Moten agreed with this assessment.  He then discussed the sale of a gun which is the same caliber as the one used by Torrence during the June 2, 2010 shooting.

6

conversation on June 3, 2010, between a lead member of the conspiracy, Ramel Moten, and a CI, is not hearsay because they have evidence to prove there was a conspiracy of which Moten and Torrence were a part and this conversation was in furtherance of this conspiracy.[15]

"A statement is not hearsay if . . . (t)he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). It is permissible that the Government introduce into evidence otherwise inadmissible declarations of alleged coconspirators "subject to the obligation of the Government, before the case is completed, to establish the existence of the conspiracy and prove aliunde as to every separate defendant." United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979); United States v. Bey, 437 F.2d 188, 191 (3d Cir. 1971). See also United States v. Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969), Cert. denied, 397 U.S. 1028 (1970) (stating "While the practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection,' the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.") Given the large amount of interrelated testimony to be considered in this case, I find that any other approach to finding the statements admissible is impractical. Therefore, I will deny the Defendant's motion to suppress the statement made by co-defendant, Moten.

---

[15] The Government contends it will prove at trial through a variety of means, including cooperator testimony and confidential informant testimony, that Torrence and Moten were members of the conspiracy, and that the recorded conversation was in furtherance of this conspiracy, and that Hikeem Torrence did shoot at an individual on June 2, 2010, and that this shooting was part of the RICO conspiracy.

On September 16, 2010, Defendant Torrence and others allegedly shot and injured D.C. while he was walking through the 54th Drive in the BVHD looking for Ramel Moten to confront him about recent harassment of himself and M.R. D.C. observed Moten, Torrence, and others hanging out together. D.C., approached Moten, which started a scuffle during which Moten yelled to Hikeem Torrence,"Shoot him." Torrence then pulled a gun and D.C. attempted to grab the gun from him. Torrence struck D.C. in the face with the gun then fired several shots at D.C., striking him. D.C. attempted to run away and was eventually transported to the hospital and treated for his wounds.

On September 25, 2010, Moten and Torrence allegedly shot and injured M.R., a person known to the United States. A few days prior to this date, M.R. was at the basketball courts inside the BVHD, when he observed Moten discreetly walk towards him and while doing so Moten pulled out a gun. M.R. ran away before anything happened. Then on September 25, 2010, M.R. left his apartment to go for a walk. While M.R. was walking towards Bartram Drive he heard gun shots, he then turned around, and saw Moten and Torrence holding guns as they turned and ran away. M.R. was shot in the foot during this incident.

Torrence argues that he has not been charged with the September shootings, nor are they charged as overt acts in furtherance of the RICO conspiracy. Therefore, he states that evidence of the shootings is irrelevant and unduly prejudicial. The Government states that the September 16, 2010, shooting of D.C. and the September 25, 2010, shooting of M.R., have both been charged as overt acts in the conspiracy and Torrence is also charged with substantive offenses stemming from both of these

incidents.[16] In this case, the events themselves, and the evidence concerning these events are relevant and not unduly prejudicial as they are intrinsic evidence of the charged conspiracy. In fact, the Government is required to prove the events and Torrence's involvement in them because he is charged.

## IV. Conclusion

For the reasons stated above, I will deny the Defendant's Motion to Suppress Physical Evidence and Statements and Motion in Limine to Exclude Evidence (Doc. No.191).

An appropriate Order follows.

---

[16] See Overt Acts 69 and 70 of the superseding indictment and Counts Eighty-Four through Eighty-Seven.